IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| JOSE J. GALIANY CRUZ<br>Defendant | * | |
| | * | |
| | * | |
| v. | * | Case No. 03-083 (JAG) |
| UNITED STATES OF AMERICA | * | |
| | * | |

MOTION SEEKING RELIEF FROM JUDGMENT BASE ON FRAUD
UPON THE COURT UNDER HAZEL-ATLAS AND SUPPORTED BY THE
PROVISION OF FEDERAL R. CIV. P. RULE 60 (d)(3) AND PERJURED
TESTIMONY TO THE GRAND JURY SEEKING DISMISS OF INDICTMENT

TO THE HONORABLE COURT:

COMES NOW, JOSE J. GALIANY CRUZ (Pro se) very respectfully Alleges and Prays:

In this Motion Seeking Relief, this Pro se defendant begs this Court indulgence when considering his request for leave with an eyes towards his Pro se Status.

Initially, defendant directs this Court's attention to the liberal construction standard Pro se litigants, See <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

Thus, in support of this Court granting the alternative respective relief requested herein, defendant states as follows base in Law and Fact.

### JURISDICTION

The Court's inherent power to set aside a judgment for fraud on the Court is not a new concept, it is a historical duty and obligation. <u>Hazel-Atlas Glass Co. v. Harford Empire Co.</u>, 322 U.S. 238, 64 S. Ct., 997, 88 L. Ed. 1250, 1944 Dec.Comm'r Pat.675(1974)

In the Criminal context, the Court in <u>United States v. Smiley</u>, 553 F. 3d 1137, 1144(8th Cir. 2009), agreed that Smiley's fraud on the Court Motion was not a Second or Successive Petition and "reasoned that the fact the case involved a criminal sentencing process rather than a Civil proceeding such as <u>Hazel-Atlas</u> was inconsequential".Citing, <u>United States v. Bishop</u>,774 F. 2d 771,774(7th Cir. 1985). In, <u>Borke v. United States</u>,2005 U.S. Dist. LEXIS 25908, 2005 WL 2850354 (E.D. Pa. 2005), the Court stated that "petitioner's motion seeking relief from judgment based on fraud upon the court under <u>Hazel-Atlas</u> ... and as such, is not a second or successive §2255 motion". See Also,<u>Calderon v. Thomas</u>,523 U.S. 538, 553, 118 S.Ct.1489, 140 L.Ed. 2d 728(1998), and <u>United State v. McVeigh</u>, 9 Fed.Appx. 980,2001 WL 619765 (10th Cir. 2001).

The Supreme Court has stated that "an independent action should be available only to prevent a grave miscarriage of justice". <u>United States v. Beggerly</u>,524 U.S. 38, 47 118 S.Ct. 1862,141 L. Ed. 2d.32 (1998). To prevent the restrictions of RULE 60 from "be[ing] set at naught", independent actions under Rule 60 (d) must" be reversed for those case of injustice which, incertain instance, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of Res Judicata".<u>Id.</u>(quoting <u>Hazel - Atlas)</u> "Rule 60 (d) provides for extraordinary relief on a showing of exceptional circumstances". <u>Fox v. Brewer</u>,620 f. 2d 177,180(8th Cir. 1980).

<u>Hazel-Atlas</u>, thus expanded the range of the fraud exception for outimely request for relief delineated in <u>Throckmorton</u> to include fraud committed by "Officers of the Court see Moore 7 Federal Practice, P. 6033, P. 60.335 (1995),<u>United States v. Throckmorton</u>,98 U.S. 61 25 L. Ed. 93(1878). The First Circuit has noted that "fraud cognizable to maintain an untimely independent attack

upon a valid and final judgment has long been regarded as required more that Common Law Fraud", George P. Reintjes Co. Inc. v. Riley Stoker Corp.71 f. 3d 44, 48 (1st Cir. 1995).

The Court's inherent power in supported by the provision of federal R.Civ., Rule 60(d)(3) commonly known as the "saving clause", states in part that: "This rule does not limit the power of a Court to entertain an independent action to relieve a party from a judgment, order, or proceeding ... or to set aside a judgment for fraud upon the Court". Clearly, Rule 60(d)(3), supports the Court's inherent power to set aside (Galiany Cruz) defendant's Judgment for fraud upon the Court.

## STATEMENT OF THE FACTS[1]

### A. The Drug Conspiracy

Defendant was the mastermind and leader of a drug trafficking conspiracy that controlled three drug point in Coamo, Puerto Rico specifically La Vega del Puente, San Luis, and Santa ANA Park.(GJ T. 3/14/2003,p. 2-3, GJT. 9/4/2002, p.24-27 and TT. 3/8/2004,p.43 TT. 3/9/2004, p.9, TT. 3/11/2004, p. 33). Defendant's gang engaged in street level dealing, which consisted of obtaining large quantities of drug and processing them into smaller packages to be sold at a better price.(TT 3/8/2004,p. 46). At the Vega Del Puente drug point, Defendant and his gang sold heroin sold on a daily basis (GJT. 9/4/2002,p. 24-25) while they sold cocaine and marijuana of San Luis and Santa Ana (GJT. 9/4/2002,p. 25-27 and TT. 3/11/2004,p. 36).

---

[1] For Purpose of this Motion Defendant will recite the "FACTS" as alleged by the Government.

Different members of the Defendant's Gang served different functions. Co-defendants Juan Carrion Torres, Luis Aviles Colon, Julio Mateo Espada, Jose Enrique Flores, Angel Rodriguez, Roberto Torres Ruiz, Hector Reyes Martinez, Kelvin Torres Ruiz and Cooperating co-defendant Carlos Ivan Torres Martinez were enforces in the Gang.(GJT. 3/14/2003,p. 4-7 and TT. 3/8/2004,p. 52). As enforces or triggermen, "All co-defendants provided protection to Defendant's organization and the drug points from rival Gangs.

## STATEMENT BEFORE GRAND JURY AND JURY TRIAL
### B. The Drug Conspiracy

On September 4, 2002 - Carlos Ivan Torres Martinez declare before the Grand Jury that Jose Vazquez Ortiz, Roberto Torres Ruiz and Kelvin Torres Ruiz, working on the table decking the cocaine, decking the marijuana, weighig it. Also, declare that Julio Mateo Espada and Jose Vazquez Ortiz processed the heroin, this between ("March,2001 through November 2001"). Torres declare that Defendant group sell in Vega Del Puente was Heroin, and Santa Ana Park only sold cocaine . . .,'San luis sold marijuana and Cocaine over there.(GJT 9/4/2002, p. 24-27)

On September 4,2002 and March 14, 2003 - Special Agent Noel Gil declared before the Grand jury, on september 4, he testified as to general aspects of a narcotics trafficking gang located or currently operating in Coamo Puerto Rico (GJT 3/14/2003,p.2-3). On March 14, 2003 - Agent Gil declared and previously presented as Grand Jury ( Exhibits #1 to #21 ). In this Exhibits -(Exh.)- specificate (Exh. #7, is a picture of Julio Mateo Espada aka "Julito El Burro", which Agent Gil declare that he is one of the organization enforcers as well as runner and packagers, As (Exh., #10 - is a picture of Jose A. Vazquez Ortiz aka "Pescao", Agent

Gil declared that he is one of the runner within the organization as well as of their enforcers and that is a Booking picture. Also Agent Gil presented to the Grand Jury as ( Exh. #12, a picture of Juan Carrion Torres aka Juanito, and under oath SA Gil declared that Carrion is the gang's top enforcers, 'citing' - (" he's one of the most feared within the organization, as well as outside the organization. Been involved in numerous homicides"). The (Exh.#16 a picture of Francisco Melendez Santini aka 'Cano', and SA Gil declare that Cano is also one of the sellers in the organization frug sellers.

Agent Gil, declared that there are Two defendants which do not have identified pictures for. One of those defendant is Kelvin Torres Ruiz aka Kelvin and SA Gil describe to 'Kelvin' like a white male born on November 22, 1979 and has a Social Security number of 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 and 'Kelvin' is one of the enforce in the gang, as well as a packager and runner at times within gang. And, the other person that has not been identified through picture, SA Gil declared that he is a street level dealer whose name is Jose E. Rivera Zayas aka 'Wilo and he's a white male approximately five four in height with a date of birth of March 19, 1959 and a Social Security account number of 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.

SA Gil, testified on September 4, 2002, as to the amount of narcotics which the Galiany organization sold at its various drug points which was La Vega del Puente, San Luis and Santa Ana Park. SA Gil, testified that he did an analysis of a conservative amount as the sales . . . of the dollar value of the sales that were going on in these drug points. ( GJT 3/14/2003,p. 30-31 )

C.   Issues

The government, through fraud, obtained subject matter juri sdiction by submitting a false statements to the Grand Jury, and has maintained that jurisdiction by deceptive practices throughout "each stage" of the proceeding.

Defendant present before this Court un rebutable evidence, from the Court records of this fraud. The (3) main proceedings in which defendant have brought into question the vality of jursidiction, are, the grand jury; the suppression of evidence; and the trial. Without the true bill from the Grand Jury, there is no indictment and without the indictment, there is no trial, and wittout the trial, there is no finding of guilty. This Court is not being asked

to go back in time to make a ruling, however, the record reflects the facts, and the facts are the evidence of what happend, in spite of what "reasons" one may put forth.

The Grand Jury, this instrument, in order to challenge it, you must do so "before" the petite jury is sworn in, however, the testimony of the "same" witness can only come after the trial has started. A skilled lawyer could use this to his 'unlawful' advantage. Many of the rules of the courts overlap themselves as such. While the chance to challenge the indictment has escaped, the 2 sworn testimonies however, equal perjury, which violates the due process of the law. If, you witness who has helped you to establish jurisdiction through the Grand Jury, testifies that he never had the information from which the true bill was produce, what is said of jurisdiction? The evidence here is just that; on the one hand we have the Grand Jury transcripts, and on the other the trial transcripts and State trial transcripts and Tape Records and Newly Discovery Evidence. Together, they expose the fraud that robs the defendant Due Process of the Law.

## FRAUD UPON THE COURT and PERJURY TESTIMONY TO THE GRAN JURY and THE SUPPRESSION OF EVIDENCE

### D. The Testimony of Carlos Ivan Torres Martinez and Special Agent Noel Gil Before The Grand Jury

1. Torres-Matinez declared that Jose A. Vazquez-Ortiz aka 'Pescau' working on the table, processed the heroin (GJT 9/4/2002 p. 22-24, along with Julio Mateo-Espada aka 'Julito El burro' (GJT 9/4/2002,p.24). Torres, also that Kelvin Torres ruiz, working on the table processed the marijuana, along with Robert Torres-Ruiz (GJT 9/4/2002,p. 22-24), in open Court before jury, according to this cooperating Torres testimony co-defendants Kelvin Torres, Robert torres, Jose Flores, Jose Vazquez, Julio Mateo himself and other routinely packaged and processed the drug sold at the various drug points. See (TT 3/11/2004,p. 38). he started working for defendant as a runner per week around March 2001. (TT 3/11/2004, p. 36-37) and he told the jury he stopped

working as runner between November 2001 and January 2002 (TT 3/11/2004, p. 71-72). However, before the grand jury he testified that from November 2001 to January 2002 he tried to get away. See:(GJ 9/4/2002, p. 14).

SA' Gil testified in trial that the investigation began back in 1998 with another special Agent who was Jorge A. Rivera and SA'Gil took over the investigation in August of 2001 when he arrived in Puerto Rico (TT 3/8/2004, p. 43-45). SA' Gil also testified to the jury that the arrest was based upon the evidence that was obtained by the FBI, the investigation that was done by FBI and other agencies, and basically put together and presented in front of a grand jury, who handed indictments for 17 individuals.

a) SA'Gil to commit a fraud upon the court and given perjured testimony to the grand jury went he along with CW-Torres testified that JOSE A VAZQUEZ-ORTIZ 'aka PESCAU' working on the table processed the heroin, during the period of (March to November of 2001). See: United States v. Neises ,645 f. 3d 5, 14-16, 18(1st Cir. 2011)(improper overview where government's witness testified without personal knowledge, that certain defendants were members of the charges conspiracy and identified their specific roles within that conspiracy) Flores-De-Jesus[ ] (government's first witness improperly circled photographs of the (3) defendants appearing on a chart depicting (25) members of the alleged drug conspiracy and told the jury that one defendant was "Seller" and the other (2) were "both sellers and runners" in that conspiracy); United States v. Casa,356 f. 3d at 118-20(government Agent, going "well beyond his Personal Knowledge, "improperly" testified that there was drug trafficking Organization . . . that all four of the defendants were members of this organization, and that the organization handled specific massive quantities of cocaine and heroin").

Defendant present as evidence in this Motion the ( Appendix 1 ),show that State Court proceeding in the District of Aibonito "Case Cr. No.B SC2000 G0159", Mr. Vazquez-Ortiz after take as plea guilty the sentencing court imposed a sentenced of Two (2) year in prison. According, to this 'Legal Record' Mr. Vazquez-Ortiz at the time of the conspiracy ( March to November, 2001 ),he was in Prison.

b) Also, as part of testimony before Grand Jury by SA'Gil and CW-Torres, they declared that Julio Mateo Espada together with Mr. Vazquez working on the table processed the heroin, this during the same period of (March - November 2001).

Defendant present as ( Appendix 2 ) the evidence that is trustworthy eye-witness accounts, that declare the following:

(" I, CARMEN I. ESPADA RIVERA under oath state the following:

2. That my nephew of the name Julio G. Mateo Espada which Social Security number is 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, lived in my home during the period of June 2000 to June 2001.
3. That during that time that lived in my residence, he enjoyed of benefits such as the Nutritional Assistance Program (PAN) and the program of Medical Assistance (Medicaid).
4. That during the same period of time he worked part-time with the Company Midnight Express DJ.
5. That begining July 2001 my nephew Julio G. Mateo Espada moved to the United States to work.

According, to this Sworn Statement Mr. Mateo during the period of June 2000 to June 2001, he lived in Carmen Espada house in Aguadilla, Puerto Rico, and that during that time Mr. Mateo lived in Carmen Espada residence, he enjoyed of benifits of the Government subsidized by the federal government. See (Appendix 3 ).

c) Before the grand jury SA'Gil and CW-Torres declared that KELVIN TORRES RUIZ along with Robert Torres processed marijuana and KELVIN working in the table and he was a triggerman (GJ 9/4/2002,p.16).

Defendant present as ( Appendix 4 ) document with the evidence showing that Mr. KELVIN was not in Puerto Rico during the same period (March-November 2001), First-On years (2000) Kelvin was in Orlando employee of Disney World,

Second - Year(2001) Kelvin be in the employ of "LARO Service Systems Inc.,

Thrid - Mr. Kelvin had a contract apartment in Orlando from June 24, 2000 until June 30,2001,in (570 Five Flags BLVD. 1064,Orlando Florida 32822) and during the period of June 2001 to March 2003, Mr. Kelvin lived in (Colony Club Village P-5907, Pinto Lane Orlando, FL 32822).

The contents of these 'Legal Record and Sworn Statement' is in direct contradiction of SA' Gil and CW-Torres testimony before the Grand Jury. Defendant alleges that use of perjury testimony, when Jose A. Vazquez, Julio Mateo, Kelvin Torres and Cw-Torres conspiracy with defendant (Galiany) which consisted of obtaining large quantities of drug and processing them into smaller packages to be sold at better price, specifically to Vega del Puente, San Luis and Santa Ana Park during the period of (March-November 2001), same altered the evidence before grand jury proceeding. That is fraud upon the Court.

E. The Drug Wars

On March 14, 2003 - SA'Noel Gil testified before the gran jury about of his notes which correspond to the Overt Acts, which Prosecutor Warren Vazquez and he have charged in the indictment. SA'Gil specific beginning with Overt Act #4, which describes that :

> "On or About March 16, 2001, Jose J. Galiany Cruz aka Catano along with Juan Carrion Luis Aviles Colon and Jose E, Flores shot and killed Alexander Rivera Maldonado"

(GJ 3/14/2003,P. 7);

> Next, Overt Act # 7, which alleges that 'On or about November 2001, Jose Galiany Cruz, Julio Mateo Espada, Luis Aviles Colon and Carlos Ivan Torres aiding and abetting one another shot and killer Yamil H. Santiago Rodriguez',

(GJ 3/14/2003 p. 18-19)

> Also, SA'Gil and prosecutor present before the grand jury the Overt Act #6 which describes that ' on or about Spetember 16, 2001, Jose J. Galiany Cruz, Kelvin Torres Ruiz, Hector Reyes aka Chanfle and Carlos Ivan Torres aiding and abetting one another in furtherance of the conspiracy shot and killer Alexis J. Torres',

(GJ 3/14/2003,p. 14).

Defendant allege that the prosecutor to commit misconduct before the grand jury, when permit to SA'Gil declare that the (Overt Act #6) the defendant and other; (" in furtherance of the conspiracy shot and killed Alexis J. Torres-which the SA'Gil answer: 'A - Yes , That is True" ) (GJ, p. 14).

In placing the prestige of the United States behing the testimony of said witness (SA'Gil), the prosecutor ( Jared Lopez) to commit misconduct, permit to SA'Gil told the grand jury that "Yes , that is TRUE"[1] Said testimony was geared to have the grand jury find the witness's to be one of truthfulness on

---

[1] making personal asurances about the facts that don't the consiste of full knowledge. See: United States v. Rosado-Perez,605 f. 3d 48,55(1st Cir. 2010);see also United States v. Etienne,772 f.3d 914(1st Cir. 2014)(at time involves a witness's assertion of fact not based on his own knowledge when those facts are not otherwise proven").

the basis that " defendant and other shot and killer Alexis J. Torres" and others.

These remarks prejudiced the grand jury against the defendant. Defendant submit that testimony about the SA'Gil as a matter of fact that defendant shot and killed Alexis J. Torres, when he do not have personal knowledge of that it was unfairly perjudicial to defendant since it also poisoned the well. This was Misconduct before the grand jury. Although the Government has broad discretion in conducting grand jury investigations, the prosecutor must refrain from engaging in "fundamentally unfair tactics" before the grand jury. United States v. Ciambrone, 601 F.2d 616, 622-23(2d Cir. 1979). Further, a prosecutor must not misled the grand jury into thinking it is getting eyewitness testimony from a witness "where it is actually getting and account whose hearsay nature in concealed". United States v. Estepa, 471 F.2d 1132, 1136 (2d Cir. 1972).

Said testimony SA'Gil, established that a violation substantially influenced to the grand jury decision to indict at the defendant (Galiany).

In the Overt Act # 7, Cw-Torres testified to the grand jury that Julio Mateo Espada was also involved in a murder along with Cw-Torres. The proceeding before the grand jury the Cw-Torres testified that (" Galiany had entrusted me to ... if we ... take him away or kill him ")(GJ, p.16)

Julio Mateo, who allegedly participated in the murder along with Cw-Torres (GJ,p.16-18) was in New York. See:(Sworn Statement of Carmen I. Espada Appendi __2__). In addition, according to the (PSR) of Julio Mateo, at the time of the murder (october or november 2001), he was in New York from September 2001 until the end of the year 2001 working as a mail room attendant. See:(PSR of Mateo Espada-prepared by Andrea L. Caribben verified,Paragrah 51,p.9).[2]

On August 22, 2002, before testified in the grand jury - Cw-Torres declared to the SA'Agustin Lozada, Reinaldo Rosado and SA'Rafael Brana, that in November 2001, he met with the defendant at his residence in Coamo. Present during the meeting were Julio Mateo, "JUAN CARRION-TORRES" and Luis Aviles, this meeting was to Order the Yamil H. Santiago murdered. See:( Appendix __5__ -302's file # 2440-SJ-35399 ).

---

[2] Mr. Mateo was employed for the Mellenium Group in New York, earing $7.50 per hour.

Said Statement by Cw-Torres are FALSE. Because, said meeting with the defendant at his residence in Coamo, specific on November 2001, <u>Juan Carrion Torres</u> <u>it</u> <u>was</u> <u>in</u> <u>the</u> <u>Jail</u> <u>since</u> <u>August</u> <u>2001</u>, until year 2002. See:(Appendix __6__). On the contrary of this statement doing by Cw-Torres, Yamil Santiago was assasinated on the 13 of October of 2001. See: (Appendix __7__).[3]

Defendant present, the Sworn Statement of Sara D. Sanchez that is New Evidence that prove's that defendant (Galiany) was at the time and hour on October 13, 2001 - on the Hotel Hyatt Regency Cerromar in Dorado, Puerto Rico. See: ( Appendix __8__ - Sara Sanchez stated that - " in the day of 11 to the 14 of October 2001 she and defendant were in Hotel ").

Additionally, at the State Preliminary Hearing about 'Yamil Santiago' murder in the Case No. <u>JVI200403545</u> in the Court Room 403, the Cw-Torres testified that defendant (Galiany) gave instructions to kill Yamil to Luis Aviles-Colon who was the one who knew Yamil. See:( Appendix __9__ ) This testimony is in Total Contracdiction to Cw-Torres testimony before the Federal Grand Jury. See:( GJ, P. 16 ), At the State Preliminary Hearings, Cw-Torres accepted in cross examination that if JULIO MATEO aka 'JULITO' who Cw-Torres allege fired Yamil in the Head, testified that he (JULITO) was in the United States at the time of Yamil murder. See:( Appendix __10__ )

Also, defendant present the Statement of the Puerto Rico Police Agent Eliezer Zayas Santos that testified that he seized the 38. Caliber Revolver used in Yamil's murder at <u>Yaimar Lopez-Reyez</u> house and Yaimar Lopez Reyes doing a Sworn Statement that the weapon was <u>his</u>.

---

[3] In the trial, Cw-Torres told the jury, later on they went to defendant to tell him what happened with ' Yamil ". See:( TT. 3/11/2002, p. 67 ) and see: (TT 3/8/2004, p. 43-45), that SA'Gil Stated that: he took over the investigation in August of 2001 when he arrived in (P.R.) and that said meeting with defendant at his residence in Coamo (November or October 2001) SA' Gil, submitting a false statement to the Gran Jury and Jury Trial, that the arrest was based upon the evidence that was obtained by the FBI, the investigation that was done by FBI and other agencies, and basically put together and presented infront of a Grand Jury, who

Page 12

Agent Elezer Zayas testified that he seized the (.38 caliber revolver) from Yaimar on November 2, 2001, which would have made it impossible for that gun to have been used after the November 2, 2001, seizure to murder Yamil. In Defendant pre-sentence report which states that according to "interview" to Cw-Torres, Yamil was murdered on November 2, 2001. This when the weapon was already in Police Custody.

Like un-rebuttable evidence, Defendant present the Statement of the Puerto Rico Police Homicide Division of Guayama, Agent Alberto Giraud Vega in the State Trial against Luis Aviles Colon and Julio Mateo about the Yamil murder. Agent Giraud to question from Lcdo. Julio Claudio Otero who asking he that:

JC: In that aspect is what I'm asking you, I ask you newly if Yamil dissapered on the 13th in accordance with the information

T: I do not remember the date

JC: If it says there too in November there is an inconsistancy right, that it was at the ned of October at the beging of November is an inconsistancy right

T: Yes, it's an inconsistancy

JC: You had, you spoke to the FBI Agent Agustin Lozada in relation to this

T: We have talked, that he put the witness at disposition

JC: Did you talk about dates

T: NO

JC: None of that, did not compare notes

T: No

JC: Even though he had notes and you had notes is it customary for you no to compare with your coligues

T: Well

JC: Answer with a Yes or No

T: Compar notes

JC: No, I ask you did you talk to agent Lozada

T: Correct

JC: It was an agent who was involved in the case, on a federal level with the FBI

T: Correct

JC: Task Force FBI, correct

T: Correct

JC: He had notes related to this case because he interview Carlos Ivan for this case

---

handed indictment for 17 individuals, which included [JUAN CARRION] who was in the Jail since August 2001, until year 2002. SA'Gil never investigated, nor corroborate any evidence with relation to this conspiracy, before to presented to the grand jury. Thus, all this proves that SA'Gil gave FALSE testimony before a grand jury and jury trial and commiting fraud upon the court.

    T : Correct

    JC : So you did not compare your is with his

    T : No

    JC : I ask you do you normally not compare notes to see what concures and what does not

    T : It is not customary

    JC : The custom is to compare notes

    T : Yes

    JC : If you would have compared notes and would have notice the differences I ask, you see the difference in dates of the events you see a difference in the witness right

    T : Um ... Yes

    JC : You see there is a difference when Yamil dissapears of they kill him, see the date do not coinside with the events that Carlos Ivan says

    T : Uh, uh, Yes    ==== See : ( Appendix 11 ) ====

Mr. Giraud was very clear that he never shared any evidence with the FBI nor did he corroborate or compare the same with the FBI. This Statement from Agent Giraud proves that FBI SA'Gil never investigated, nor corroborated any evidence with the Homicide Department of Puerto Rico, who are the only one's in power of all the evidence related to the death of Yamil and Alex Torres.

All this proves that SA' Gil gave False testimony before a federal Grand Jury, and commiting fraud before the court.

F.    Suppression of Evidence

The government withholding to the grand jury evidence that showing that Mr. Carrion along with 65 Co-defendants in the case of <u>Santiago-Baez v. United States</u> Cr. No. 05-429 (JAF) with conspiracy to possess with intent to distribute narcotics at ten different drug points in Santa Isabel, (PR),"from 1998 up to the return of the indictment (2005). In the alleged conspiracy, Mr., Carrion participated in a murder of "<u>Carlos Luis Matos-Otero and attempted to kill Jose Guillermo Santiago-Zeno</u>" as part of the conspiracy in February 3, 2001. In addition, on June 29, 2001, Mr. Carrion, shot and attempted to kill <u>Rufino Cotto-Martinez</u>.[4] On October 31, 2001, Mr. Cotto provided the following information: Mr. Cotto was directly involved in the sale of narcotics at the Camboya drug in Coamo, (PR). see: ( Appendix 13 )

---

[4] see: ( Appendi 12 )

Mr. Cotto was shot and attempted to kill by Mr. Carrion because Mr. Cotto was a member of the organization headed by defendant (Galiany). see: ( Appendi __13__ - criminal No. JOP02G0014 - JLA02G0589-605, Superior Court Ponce,(PR)

On December 12, 2005, the same Prosecutor ( Warren Vazquez ), charge to Mr. Carrion along with Luis E. Santiago Baez participated in a murder of 'Carlos Luis Matos-Otero' who is the cousin of defendant wife. see ( Appendix __12__ ).

The government to commit fraud upon the court when withhold to the grand jury evidence that showing that Mr. Carrion it was in the Jail since August 2001, Two of Three months before meeting was to order the Yamil H. Santiago murdered. Also, DEA report of investigation of 2/14/2002, prepared by TF/A Angel L. Sanchez File Name: Carrion Torres, Juan - according to the above report, the agent debriefed CS on 2/13/2002 re: a contract made by Luis E., Santiago Baez to kill Jose J. Galiany Cruz aka Catano see:( Appendix __14__ ), these report prove Misconduct and Fraud by the government , because is clearly exculpatory with respect to the charge at grand jury that Mr. Carrion conspired with defendant, and was a member of defendant's drug organization. More, prove that Mr. Carrion was at war with defendant. In addition, the government had knowledge before the grand jury and defendant trial the existence of a witness who could corroborate that Mr. Carrion and defendant were at war.[5]

On March 11, 2002 - DEA agents debrief a confidential source, who stated that Mr. Carrion was an associate of the leader of the Las Palmas Gang (Who, according to the CW-torres, SA'Gil and government's testified at the grand jury was at war with defendant's). The source, further stated that "Approximately two weeks ago, he/she witnessed when Juan Carrion-Torres,aka Juano exited a black cherokee and began shooting at Catano's (Defendant) car in the Urbanization San Luis". See ( Appendix __15__ )

---

[5]See: United States v. Williams, 899 f. 2d 898 (10th Cir. 1990)(Prosecutor has duty to present substantial exculpatory evidence to Grand jury)

Moreover, the testimonys of Cw-Torres and SA'Gil about that Mr. Carrion (" is the gang's to enforces)(GJ 3/14/2003,p.5 and TT.3/8/2004, p.54, 3/10/04 p. 51) and that Mr. Carrion was seeking to kill members of the Las Palmas gang in March 2001 is undermined by evidence that the leader of this gang accepted him as an associate. See: ( Appendix 15 )

The evidence presented to the grand jury and trial that Mr. Carrion was part of the defendant conspiracy was based almost entirely on the testimony of Cw-Torres and SA'Gil, and the evidence suppressed by the government would have played a critical role in undermining the Grand Jury determining whether there is Probable Cause to belive that a Crime has been committed, "confidence in these witness".

In other DEA report of investigation of 2/15/2002, prepared by same TF/A Angel L. Sanchez file title Carrion-Torres, Juan. According to the CS, Yamil was involving Reyes-Echevaria and Santiago Baez into problem. When the CS asked for the whereabout of Jamil, Reyes-Echevaria explained to the CS that Jamil was dead. Reyes-Echevaria explaind to the CS that Julio Rivera Rodrigue set up Jamil. Here again, the Government had this CS and report in its possession prior to the grand jury and trial in the instant case. The government never disclosed this information to grand jury nor in discovery before the trial.

Cw-Torres testified that in March 2001 he gave a ride to defendant, Mr. , Carrion and other, who told him that they had murdered a person from Las Palmas - Said testimony that Mr. Carrion participated in the March 2001 murder and that defendant ordered Yamil's murder to protect Mr. Carrion would be severely undermined by the withholding evidence contradicted Cw-torres and SA'Gil testimony. Defendant alleges, that his due process rights were violate due to alleges grand jury abuses by the prosecutor, specifically the failure to disclose this 'culpatory and exculpatory evidence'.

In the presented case, the prosecutor withhold 'culpatory and exculpatory evidence' from the grand jury which would warrant dismissal of the indictment. The grand jury would have declines to return the indictment on the merits (returns a "no true bill")

The SA'Gil declared before to the grand jury about September 16, 2001, defendant (Galiany) ..." in furtherance of the conspiracy shot and killed Alex J., Torres" and that his the principal piece of evidence was also Police of Puerto Rico, report that were done about this homicide, as well as Medial Examiner autopsy reports of the autopsy of Alex J. Torres, as well as the interview of Cw-Torres.[6]

As piece of evidence SA'Gil presented to the grand jury and trial to Cw-Torres. Cw-Torres testified that Kelvin shot five (5) time at BEBE and Alex Marcola. Both fell to the ground. (GJ 9/4/2002 p. 21 and TT.3/11/2004 p. 56)

Also, like piece of evidence SA'Gil used to corroborate to do research into Alex J. Torres murder' was Police of (PR) reports that were done about the murder, as well as Medical Examiner autopsy report.

Defendant contends that the SA'Gil never " to corroborate nor to do research into Mr. Alex Torres Murder, because preliminary sketck related to murder of Mr. Alex Torres and the wounding of BEBE. According, to report (Marcola) was use different weapons ("357-revolver") and (".38-revolver") and that (MARCOLA) he not fell to the ground dead, like Cw-torres testify on the grand jury and trial, and or which he testify saw when Kelvin Torres -- "ONLY" --shot (MARCOLA) and fell to ground dead, and was use a .38 Calibre revolver in the murder. see Also, ( Appendix 18  )

Defendant contends that the grand jury that (overct act) the indictment in this case did so based on speculation and conjecture, not on evidence that established " Probable Cause " to believe that defendant had committed the crime of conspiracy.

Defendant present as proof the oath statement of the JOSE R. ORTIZ-MELENDEZ that he stated that on September 16, 2001 from 9:30 to 11:30pm, that he was inside the place (OLD POPULAR CENTER) next to the entrance door which was closed and hand a strong knocking on the door on several occassions and open and (MARCOLA) went in and says to him They shot me, after that fell on the ground and we hold him, put him on a old big car and took him to the Hospital. See: ( Appendix 37 , of the Motion to Reconsider - DKT 71 )

---

[6] See: ( Appendix 11 , see:(GJ 9/4/2002, and TT 3/8/2004, p. 43-45)

SA'Gil and Cw-Torres testifed before the grand jury and trial that "Chanfle Kelvin, Cw-Torres and Defendant participated in a murder of (ALEX TORRES - Aka Marcola).

Defendant present as ( Appendix  17  ) the evidence that is trustworthy eye witness accounts, that declare the following:

> (" I, ONEIKA LEE CEDA MARTINEZ, see that [BEBE] and [MARCOLA] go to the Party front me pass to the Brother of GALDO, he is MELVIN and see in the back of my cousin and BEBE came GALDO, ROBERTICO and start shooting GALDO and MELVIN I see that BEBE and my counsin running BEBE go the size walk that I it was front to the Party and my counsin running to the Party, the people in the Party open the door and MARCOLA enter, next see GALDO and ROBERTICO running out and get on a car from GALDO is BLACK Color Toyota ".

See: ( Appendix  17  )

Furthermore, with regards to the (MALCOLA) murder, on March 11, 2004, was interview the witness MELVIN JOEL SANTIAGO MARTINEZ who is under states witness Protection in Guaynabo, Puerto Rico. MELVIN JOEL SANTIAGO stated the agent during the interview that the participants in that incident were Edgardo Santiago (brother), Roberto and [he] Melvin. See ( Appendix  18  )

As, to give rise to indictment the government presented before the grand jury the SA'Gil testimony that he testified as to general aspects of a narcotics trafficking gang located in Coamo, Puerto Rico and SA"Gil declared that the leader of that organization was defendant (GALIANY). See ( GJ 3/14/2003, p.2 - 3 )

Defendant present as ( Appendix  19  ) that is a Sworn Statement of JOSE ANTONIO PEREZ RODRIGUEZ that stated that defendant (GALIANY - Aka - CATANO) did not own or sell drugs in any of those drug point mentioned which are VEGA DEL PUENTE and the LLANOS Section in Coamo, that from May of 2001 until November 2001. PEREZ stated that the drug point in LA VEGA DEL PUENTE that he was the owner and that Cw-Torres was their runner supplying them with drugs and collecting the money. See, also ( Appendix  20  - The Sworn Statement of Carlos Martinez Bermudez )

This Sworn Statement proof that SA"Gil never to corroborated nor to do research into narcotics trafficking gang located on LA VEGA DEL PUENTE in Coamo, which was ' the Leader ' of the organization was defendant.

Defendant allege that 'CWs' grand jury and trial testimony was replete with perjury that the government either with SA 'Gil and Agustin Lozada or was negligent in allowing him to testify falssely, that this Prosecutorial Misconduct nose to the level of a due process violation, and that, therefore, the indictment and judgment against defendant (Galiany) must be dismissed.

RESPECTFULLY SUBMITTED
In Terre Haute, Indiana this 23 Day of February, 2016.

By: _____
JOSE J. GALIANY CRUZ
#23745-069, unit D-1
USP. Terre Haute
P.O. Box 33
Terre Haute, IN 47808

On this 23 day of feb, 2015.

Respectfully Submitted

_____
JOSE J. GALIANY CRUZ
Reg. No. 23745-069
USP. Terre Haute
P.O. BOX 33
Terre Haute, IN 47808

CERTIFICATE OF SERVICE BY MAIL

I hereby certify that a true and complete copy of the foregoing has been given to prision officials for mailing, first class postage prepaid, and sent to:

U. S. Attorney
350 Chardon Avenue, Suite 1201
San Juan, P. R. 00918

On this 23 day of feb, 2015, pursuant to 28 U.S.C., § 1746.

_____
Mr. JOSE J. GALIANY CRUZ
Pro se Defendant